# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Steven and Vicky Breiland,

                              Plaintiffs,

                                                    Civ. No. 09-2605 (RHK/RLE)
                                                    **MEMORANDUM OPINION
                                                    AND ORDER**

v.

MeritCare Health System, William Noyes,
M.D., individually, and William Noyes, M.D.,
P.C., owner, operator and d/b/a Cancer Center
of North Dakota,

                              Defendants.

---

Joseph M. Crosby, Crosby Law Office, St. Paul, Minnesota, for Plaintiffs.

Randall S. Hanson, Donna M. Smith, Camrud, Maddock, Olson & Larson, Ltd., Grand
Forks, North Dakota, for Defendants William Noyes, M.D., individually, and William
Noyes, M.D., P.C., d/b/a Cancer Center of North Dakota.

---

## INTRODUCTION

In this action, Steven and Vicky Breiland[1] have sued MeritCare Health System

("MeritCare"); William Noyes, M.D., individually ("Dr. Noyes"); and William Noyes,

M.D., P.C., d/b/a Cancer Center of North Dakota ("Cancer Center"), alleging medical

negligence.  Dr. Noyes and Cancer Center now move to dismiss for lack of personal

jurisdiction.  For the reasons set forth below, the Court will deny the Motion.

---

[1] Insofar as Vicky Breiland's claims are derivative of Steven Breiland's, for ease of reference the
Court refers to the Plaintiffs as "Breiland."

# BACKGROUND

Cancer Center is a North Dakota corporation with its principal place of business in Grand Forks, North Dakota. (3/3/10 Noyes Aff. ¶ 5.) As its name implies, Cancer Center provides medical treatment to individuals suffering from various forms of cancer. (Id. ¶ 9; Berndt Aff. Exs. 2, 9.) Dr. Noyes, a North Dakota resident, is Cancer Center's sole shareholder. (3/3/10 Noyes Aff. ¶¶ 2, 4.)

Breiland resides in Thief River Falls, Minnesota. (Sec. Am. Compl. ¶ 3.) In 1995, he underwent treatment for prostate cancer. (Id. ¶ 1.) Thirteen years later, he received a bone scan at MeritCare's Fargo, North Dakota clinic, after complaining of pain in his back, shoulders, and neck. (Id.) A MeritCare physician suspected that his prostate cancer had spread. (Id.) He then received radiation oncology treatment from Dr. Noyes at Cancer Center in Grand Forks. (Id. ¶¶ 1-2; 3/3/10 Noyes Aff. ¶ 16.)

According to the Second Amended Complaint, Dr. Noyes failed to conduct a biopsy confirming that Breiland's cancer had metastasized before subjecting him to radiation, and in fact the cancer had not spread. (Sec. Am. Compl. ¶¶ 1-2.) Accordingly, he alleges that Dr. Noyes needlessly subjected him to radiation treatment that has injured his lungs and immune system. (Id. ¶¶ 2-13.)

Breiland commenced this action in September 2009, invoking diversity jurisdiction; he alleged various claims against MeritCare and Cancer Center sounding in negligence. With leave of Court, he later amended his Complaint to name MeritCare, Dr. Noyes individually, and William Noyes, M.D., P.C., d/b/a Cancer Center of North

Dakota as Defendants.  Dr. Noyes and Cancer Center now move to dismiss for lack of personal jurisdiction.[2]

## STANDARD OF REVIEW

At the outset, the Court must distinguish between the different types of personal jurisdiction:  specific and general.  Specific jurisdiction, the narrower of the two, exists over causes of action that arise out of or are related to a defendant's contacts with the forum state.  E.g., Johnson v. Woodcock, 444 F.3d 953, 956 (8th Cir. 2006) (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-15 (1984)).  General jurisdiction, by contrast, is far broader – it extends to *any* cause of action against a defendant and exists only where the defendant's contacts with the forum "are continuous and systematic."  Id. (internal quotation marks and citation omitted).  Here, Breiland argues only that general jurisdiction exists over Dr. Noyes and Cancer Center, and hence the Court need not address specific jurisdiction.

In order to survive the pending Motion, Breiland must establish a *prima-facie* case of general jurisdiction over the moving Defendants.  E.g., id. at 955; Lakin v. Prudential Sec., Inc., 348 F.3d 704, 706 n.3 (8th Cir. 2003).  Such a showing is not onerous – his burden "is only a minimal [one]."  Jacobsen v. Oliver, 201 F. Supp. 2d 93, 104 (D.D.C. 2002) (alteration in original) (citation omitted); accord, e.g., Market/Media Research, Inc. v. Union Tribune Publ'g Co., 951 F.2d 102, 105 (6th Cir. 1991).  Indeed, he is not

---

[2] The Complaint originally named Cancer Center as a Defendant without specifying that its correct legal name is William Noyes, M.D., P.C., d/b/a Cancer Center of North Dakota.  As a result, Cancer Center asserted in its Motion, in addition to the absence of personal jurisdiction, that it was merely a trade name not amenable to suit.  Cancer Center abandoned this argument after Breiland amended the Complaint.  (See Reply Mem. at 1-2.)

required to prove jurisdiction by even a preponderance of the evidence at this juncture. E.g., Epps v. Stewart Info. Servs. Corp., 327 F.3d 642, 647 (8th Cir. 2003). Rather, he must only establish the existence of jurisdiction "with reasonable particularity." Neogen Corp. v. Neo Gen Screening, Inc., 282 F.3d 883, 887 (6th Cir. 2002) (quoting Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n, 819 F.2d 434, 437 (3rd Cir. 1987)). Stated differently, a "*prima facie* case [of personal jurisdiction] is established if [Breiland] presents enough evidence to withstand a motion for directed verdict." Meier *ex rel.* Meier v. Sun Int'l Hotels, Ltd., 288 F.3d 1264, 1269 (11th Cir. 2002). Where (as here) the Court assesses whether the requisite showing has been made without holding an evidentiary hearing, it must view the evidence in the light most favorable to the plaintiff and resolve all factual conflicts in his favor. E.g., Lakin, 348 F.3d at 706; Digi-Tel Holdings, Inc. v. Pro-Teq Telecomms. (PTE), Ltd., 89 F.3d 519, 522 (8th Cir. 1996).[3] "Any doubts should be resolved in favor of retention of jurisdiction." VData, LLC v. Aetna, Inc., Civ. No. 06-1701, 2006 WL 3392889, at *11 (D. Minn. Nov. 21, 2006) (Ericksen, J., adopting Report & Recommendation of Nelson, M.J.) (internal quotation marks, citation, and alteration omitted).

In analyzing whether Breiland has discharged his burden, the Court must ask two questions. First, has Minnesota's long-arm statute been satisfied? Second, would exercising jurisdiction comport with the Due Process Clause of the Fourteenth Amendment? E.g., Guinness Import Co. v. Mark VII Distribs., Inc., 153 F.3d 607, 613 (8th Cir. 1998); Minn. Mining & Mfg. Co. v. Nippon Carbide Indus. Co., 63 F.3d 694,

---

[3] No party has requested an evidentiary hearing in this case.

696-97 (8th Cir. 1995). These two inquiries collapse into one, however, because Minnesota's long-arm statute extends jurisdiction to the outer limits of the Due Process Clause. E.g., Guinness, 153 F.3d at 614; Soo Line R.R. Co. v. Hawker Siddeley Can., Inc., 950 F.2d 526, 528 (8th Cir. 1991) (citations omitted).

Due process requires that Dr. Noyes and Cancer Center have sufficient "minimum contacts with [Minnesota] such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (citation omitted); accord, e.g., Republic of Argentina v. Weltover, Inc., 504 U.S. 607, 619-20 (1992); World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291-92 (1980). "The central question" is whether each Defendant "has purposefully availed itself of the privilege of conducting activities in [Minnesota] and should, therefore, reasonably anticipate being haled into court [here]." Pecoraro v. Sky Ranch for Boys, Inc., 340 F.3d 558, 562 (8th Cir. 2003) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)). There are no "talismanic formulas to personal jurisdiction." Clune v. Alimak AB, 233 F.3d 538, 542 (8th Cir. 2000). Nevertheless, the Eighth Circuit has instructed district courts to consider five factors in answering this "central question": (1) the nature and quality of the defendant's contacts with the forum; (2) the quantity of those contacts; (3) the relation of the cause of action to the contacts; (4) the forum state's interest in providing a forum for the plaintiff; and (5) the convenience of the parties.

Pecoraro, 340 F.3d at 562 (citation omitted).[4]  The first three factors are of primary

importance, while the last two factors are considered secondary.  Id.

The Court must remain mindful, however, that these factors "do not provide a

'slide rule by which [personal jurisdiction] can be ascertained with mathematical

precision.'"  TranCentral, Inc. v. Alliance Asphalt, Inc., Civ. No. 07-31, 2007 WL

951545, at *2 (D. Minn. Mar. 27, 2007) (Kyle, J.) (quoting Land-O-Nod Co. v. Bassett

Furniture Indus., Inc., 708 F.2d 1338, 1340 (8th Cir. 1983)).  Ultimately, the focus must

be on "the relationship among the defendant, the forum, and the litigation."  Id.

## ANALYSIS

### I.    Cancer Center

The Court need not linger long on Cancer Center's arguments for dismissal.  In

claiming that personal jurisdiction is lacking, Cancer Center contends that its contacts

with Minnesota are "minimal" because it does not maintain a place of business here, does

not pay Minnesota taxes, and is not registered to do business in this state.  (See Def.

Mem. at 8; see also 3/3/10 Noyes Aff. ¶¶ 8, 14-15.)  But it cannot avoid that at least one

of its physicians has seen patients at "outreach clinics" in Minnesota on an ongoing basis

since 2007.  (Id. ¶ 9.)  Nor can it avoid the fact that it has entered into a Provider

Agreement with the Minnesota Department of Human Services, pursuant to which it

agreed to be a "provider in health service programs administered by the" state.  (Berndt

_____

[4] The third factor distinguishes general jurisdiction from specific jurisdiction.  Burlington Indus., Inc. v. Maples Indus., Inc., 97 F.3d 1100, 1102 (8th Cir. 1996); Bell Paper Box, Inc. v. U.S. Kids, Inc., 22 F.3d 816, 819 (8th Cir. 1994).  Because only general jurisdiction is alleged here, the third factor is not relevant to the Court's analysis.  Steinbuch v. Cutler, 518 F.3d 580, 586 (8th Cir. 2008).

Aff. Ex. 8.)  And it nowhere disputes that it has received more than $80,000 in payments since June 2008 from the state of Minnesota pursuant to that Agreement.  (Id. ¶ 2(viii) & Ex. 8.)[5]

Cancer Center tries to deflect the importance of these facts, arguing that they amount to "extremely limited" contacts with Minnesota that do not support the exercise of jurisdiction.  (Def. Mem. at 8.)  The Court simply cannot agree.  By entering into relationships with several Minnesota outreach clinics, pursuant to which it treats patients in Minnesota on an ongoing basis, and by entering into an agreement for payment for medical services with the state of Minnesota, pursuant to which it has received tens of thousands of dollars (with substantial payments received as recently as last month (Berndt Aff. Ex. 8)), Cancer Center has engaged in conduct "that create[s] a 'substantial connection' with" this state.  Digi-Tel, 89 F.3d at 522 (citation omitted).  These contacts were neither "random," "fortuitous," nor "attenuated," Burger King, 471 U.S. at 475, but rather were intentionally and specifically directed at Minnesota; they amount to "continuous and systematic general business contacts" with this state.  Johnson, 444 F.3d at 956.  Hence, the Court concludes that Cancer Center is subject to personal jurisdiction here, because it has "purposefully availed itself of the privilege of conducting activities in

---

[5] Breiland has called into question Cancer Center's assertion that it does not maintain offices in Minnesota.  He has submitted to the Court the Complaint in an action styled William Noyes, M.D., P.C., d/b/a Cancer Center of North Dakota v. Michael Fishbein, filed in the Grand Forks County, North Dakota District Court.  (Berndt Aff. Ex. 9.)  In that Complaint, Cancer Center alleged that it "operates its clinics in Grand Forks and Devil's Lake North Dakota and Crookston Minnesota."  (Id. ¶ 1 (emphasis added).)  Regardless, for the reasons set forth below, the record adequately establishes the existence of personal jurisdiction over Cancer Center even if this evidence were disregarded by the Court.

[Minnesota] and should, therefore, [have] reasonably anticipate[d] being haled into court [here]." <u>Pecoraro</u>, 340 F.3d at 562.

Cancer Center seeks to minimize the significance of its "outreach" services, noting that in "2007 and 2008, only 1.5% of [its] total patient visits occurred at the outreach locations." (Def. Mem. at 9.)[6] Yet, the Eighth Circuit has recognized that the "[p]ercentage of a company's sales in a given state [is] generally irrelevant." <u>Lakin</u>, 348 F.3d at 709. "Many companies conduct millions of dollars in sales worldwide yet only do a small percentage of their sales in any one state." <u>Id.</u> Those sales nevertheless may be sufficient to establish minimum contacts, because the "relevant inquiry is not whether the percentage of a company's contacts is substantial for that company," but "whether the company's contacts are substantial for the *forum*." <u>Id.</u> (emphasis in original). The Court must focus not on percentages but rather on Cancer Center's Minnesota activities, and then assess whether those activities are "continuous and systematic." <u>Id.</u> Given the facts recited above, the Court has little trouble answering that question in the affirmative.

Cancer Center also notes that only one of its physicians treats patients in Minnesota, and that physician has never treated Breiland (who received services entirely in North Dakota). (Reply Mem. at 5-6.) This argument misses the mark because it relates to specific jurisdiction, not general jurisdiction. The claims in this action need not arise out of Cancer Center's Minnesota contacts if it has engaged in "continuous and systematic" conduct subjecting it to general jurisdiction here. <u>See</u> <u>Johnson</u>, 444 F.3d at

---

[6] It has not gone unnoticed by the Court that Cancer Center nowhere mentions what percentage of its *2009* or *2010* patients came from such clinics – a telling omission.

956 (general jurisdiction permits claims against defendant even where "there is no relationship between the [defendant's forum] contacts and the cause of action").

Finally, Cancer Center argues that even if it has sufficient minimum contacts with Minnesota to support general jurisdiction, exercising such jurisdiction would not comport with fair play and substantial justice.  (Reply Mem. at 6-7.)  It is true that, where minimum contacts have been established, a defendant may nevertheless avoid jurisdiction in a "compelling case" where "the presence of some other considerations would render jurisdiction unreasonable."  Burger King, 471 U.S. at 477 ("[M]inimum requirements inherent in the concept of 'fair play and substantial justice' may defeat the reasonableness of jurisdiction even if the defendant has purposefully engaged in forum activities.").  This is not such a "compelling case," however.

Courts consider the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the states in furthering fundamental substantive social policies when considering whether exercising jurisdiction over a non-resident defendant would be unfair or unjust.  Id. at 476-77; Lakin, 348 F.3d at 713.  Here, Cancer Center concedes that litigating in Minnesota would not be burdensome from a cost/travel perspective, but nevertheless contends that it would be burdened by the Court's application of "the laws of a state other than [North Dakota]."  (Reply Mem. at 6.)  The Court fails to understand this argument, as there has not yet been any determination

which state's law applies to Breiland's claims.[7]  Regardless, even assuming that

application of another state's law is the type of "burden" the Supreme Court had in mind

in Burger King, any such "burden" can be ameliorated "through application of . . .

choice-of-law rules."  471 U.S. at 477.  And "[w]hen minimum contacts have been

established, . . . the interests of the plaintiff and the forum in the exercise of jurisdiction

[typically] will justify even . . . serious burdens placed on a defendant."  Asahi Metal

Indus. Co. v. Superior Ct. of Cal., Solano County, 480 U.S. 102, 114 (1987).

Moreover, Minnesota clearly has a substantial interest in adjudicating this dispute,

which concerns injuries allegedly sustained by a Minnesota resident.  Lastly, exercising

jurisdiction over Cancer Center will prevent the piecemeal litigation that inevitably

would result from its dismissal from this case (and subsequent re-suit in North Dakota).

For these reasons, the Court concludes that it may exercise jurisdiction over

Cancer Center without running afoul of traditional notions of fair play and substantial

justice.  Accordingly, the Motion will be denied insofar as it is brought by Cancer Center.

## II.  Dr. Noyes

Although the Court has little trouble concluding that general jurisdiction exists

over Cancer Center, a much closer call is presented with respect to Dr. Noyes.  The focus

of the parties' initial briefs was on the corporation; scant discussion was devoted to Dr.

Noyes in his individual capacity.  The Court, therefore, ordered Breiland and Dr. Noyes

---

[7] Curiously, Cancer Center appears to believe that this Court will apply Minnesota law simply because this is a Minnesota forum (see Reply Mem. at 6), yet at the same time it asks the Court to determine that North Dakota law governs the parties' dispute (see Def. Mem. at 11-15).  The Court declines Cancer Center's invitation to engage in a choice-of-law analysis at this early juncture.

to submit supplemental briefs addressing whether Dr. Noyes is subject to personal jurisdiction in Minnesota. Despite that opportunity, Breiland has assembled a meager record on this issue. He continues to point to conduct that he acknowledges was undertaken by "the professional corporation" rather than by Dr. Noyes himself. (Pl. Supp. Mem. at 2.) He also baldly alleges that Dr. Noyes was Cancer Center's "sole decision maker" because he is Cancer Center's only shareholder (see id.), but that fact does not establish, *ipso facto*, that he is the only person making decisions on its behalf.

Breiland cites several cases from outside the Eighth Circuit in factual contexts similar to those present here – *i.e.*, negligence actions against both doctors and their employers (hospitals, medical clinics, professional corporations owned by them, etc.) – holding that the individual doctors were subject to personal jurisdiction. (See id. at 4-6.) Those cases, however, appear to blur the distinction between the forum contacts of the *individual* defendants and the individual defendants' *employers*, in derogation of the well-established rule that "[e]ach defendant's contacts with the forum state must be assessed individually." BankFirst v. Ginsburg, Civ. No. 08-5897, 2009 WL 465047, at *3 (D. Minn. Feb. 24, 2009) (Frank, J.); accord, e.g., Calder v. Jones, 465 U.S. 783, 790 (1984) ("Petitioners are correct that their contacts with California are not to be judged according to their employer's activities there."); Rush v. Savchuk, 444 U.S. 320, 332 (1980) ("[While] the parties' relationships with each other may be significant in evaluating their ties to the forum[,] [t]he requirements of International Shoe . . . *must be met as to each defendant*.") (emphasis added).

Nevertheless, Breiland *has* pointed to several facts relating to Dr. Noyes that, in the Court's view, are sufficient to establish a *prima-facie* case of personal jurisdiction at this juncture. In particular, he cites evidence indicating that Dr. Noyes (1) practices medicine in Bemidji, Minnesota, and has an office there, and (2) has staff privileges at hospitals located in Crookston and Warren, Minnesota. (4/12/10 Crosby Aff. Exs. A-C.) Dr. Noyes responds that such information came from third-party websites and is inaccurate (Def. Supp. Mem. at 2-3), but at this stage the Court must "resolv[e] all factual conflicts in [Breiland's] favor." Lakin, 348 F.3d at 706.[8] In addition, there is evidence in the record tending to show that Dr. Noyes's practice crosses the boundary between North Dakota and Minnesota, a not-surprising result given that Grand Forks, his primary practice location, sits on the Red River dividing the two states. (See Berndt Aff. Ex. 1, 14; 3/24/10 Crosby Aff. Ex. 15.)

As noted above, while perhaps not as thin as "homeopathic soup . . . made by boiling the shadow of a pigeon that had been starved to death," Grosswald v. Schweiker, 653 F.2d 58, 61 (2d Cir. 1981) (attributed to Abraham Lincoln), Breiland's evidence is relatively meager. Given the "minimal" showing he must make at this juncture, however, the Court concludes that he has established a *prima-facie* case of personal jurisdiction over Dr. Noyes through his "continuous and systematic" medical practice in Minnesota.[9]

---

[8] Dr. Noyes concedes that at least some of the information is correct. (See Def. Supp. Mem. at 3 (noting that he applied for and was granted privileges at Riverview Hospital in Crookston).)

[9] It is worth noting, as well, that the Court perceives no prejudice that would result by denying the Motion vis-à-vis Dr. Noyes at this time. He will be a key participant in this case and will undoubtedly be required to provide discovery regardless of whether he remains a defendant.

**CONCLUSION**

Based on the foregoing, and all the files, records, and proceedings herein, it is

**ORDERED** that Defendants' Motion to Dismiss for Lack of Jurisdiction (Doc. No. 48) is

**DENIED**.  The Court reminds Breiland, however, that he is ultimately responsible for

proving at trial, by a preponderance of the evidence, facts supporting the existence of

personal jurisdiction over both Cancer Center and Dr. Noyes.  Epps, 327 F.3d at 647.

Date:  April 30, 2010

s/Richard H. Kyle
RICHARD H. KYLE
United States District Judge

---

Moreover, as Cancer Center's sole shareholder, he obviously has a great interest in defending
this action even if he were dismissed individually.